## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TOMMY NUNLEY,              )
                                     )

        Petitioner,        )
                                     )

        vs.              )     **Case number 4:03cv0681 TCM**
                                     )

DONNA McCONDISHE,      )
                                     )

        Respondent.      )

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Tommy Nunley, a Missouri prisoner, is before the undersigned for final disposition pursuant to the written consent of the parties. 28 U.S.C. § 636(c).

### Background

One day in May 1998, Tommy Nunley ("Petitioner") was tried by a jury on two counts of selling cocaine, a controlled substance.

The first witness to testify was Officer Keith May with the Southeast Missouri Drug Task Force. (Resp. Ex. A at 95.) With the help of confidential informants ("CI"), May investigated illegal drug activity in Cape Girardeau, Missouri. (Id. at 96, 99-100.) He used a CI, Gary Leadbetter, to purchase controlled substances from Petitioner. (Id. at 98.) Specifically, on September 24, 1996, May and another officer met with Leadbetter, searched his truck and person, and installed a video camera in his truck. (Id. at 98, 100-01, 113, 124-25.) Leadbetter was also given $20 with which to try purchase crack cocaine. (Id. at 103.)

Leadbetter was then directed to a particular area, where he was flagged down and sold some drugs.  (Id.)  After this transaction, May recovered the camcorder, the video cassette, and the purchased drugs.  (Id. at 102, 103, 128.)

The next day, May again searched Leadbetter and his truck and installed video equipment in the truck.  (Id. 104, 113, 128-29.)  Leadbetter was sent to the same general area and attempted to purchase cocaine.  (Id. at 104, 129.)  The second transaction occurred in the 500 block of South Pacific.  (Id. at 116.)  As in the day before, after the transaction, May retrieved the camcorder, the video cassette, and the purchased drugs.  (Id. at 105.)

May was unable to see or identify the person who sold the drugs to Leadbetter.  (Id. at 117, 119, 120.)  In order to identify the man on the video, the video was shown to a group of officers.  (Id. at 120.)  One of the officers, May was unable to remember which, identified the person on the tape as Petitioner. (Id.)

After each buy, May put the purchased substance in a highway patrol evidence bag. (Id. at 104, 105.)  On the bags were the "case number or buy number, property control number, narcotic violation, location that it occurred, suspect's name and brief description of the evidence that's inside the bag."  (Id.)  Inside the first bag, State's Exhibit No. 5, was a clear zip lock bag containing one cellophane wrapper with the purchased substance.  (Id. at 105.)  Inside the second bag, State's Exhibit No. 6, there were two small zip lock bags with the purchased substance inside.  (Id. at 106.)  May identified both bags as being "substantially the same as when [he] filled [each] out and put the cocaine in [each] and sealed [each] up."  (Id. at 104.)

He then described the chain of custody of the two evidence bags.  He sealed, labeled, and marked the first bag at the scene and the second bag at his residence.  (Id. at 106.)  He next took the evidence bags to the highway patrol office in the sheriff's department in Cape Girardeau County and locked both bags in an evidence locker in that office.  (Id.)  An "evidence man" from Troop E in Poplar Bluff came, retrieved the evidence bags, and returned with them to Poplar Bluff.  (Id.)  This man completed his paper work at Poplar Bluff and then transported the bags to the SEMO Regional Crime Lab (the "Crime Lab") in Cape Girardeau.  (Id. at 107.)  After the evidence was analyzed at the lab, the "evidence man" retrieved the evidence bags from the Crime Lab and stored them in the evidence locker.  (Id.) May picked up the bags on the morning of trial.  (Id.)

Leadbetter was the next witness.  He testified that the video cassettes, State's Exhibits 3 and 4, were an accurate and fair representation of what happened as they related to the two sales.  (Id. at 126-31.)  The tapes were played to the jury, without audio.  (Id. at 126, 130.) On cross-examination, he testified that he was never asked to pick Petitioner out of either a photo lineup or a physical lineup.  (Id. at 143-44.)

Ms. Pamela Johnson, a chemist at the Crime Lab, was the next, and last, witness to testify.  She testified that she had initialed and dated the two evidence bags when she sealed them.  (Id. at 149.)  Inside the evidence bags there were cellophane bags containing a white substance.  (Id.)  She weighed and tested the substance in each cellophane bag and concluded that they were cocaine base.  (Id. at 150.)  Johnson then testified that the seals on each evidence bag were in the same condition as when she returned them and that none of the

other seals were broken.  (<u>Id.</u> at 152.)  Each of the two evidence bags was admitted into evidence without objection.  (<u>Id.</u> at 161.)

Petitioner moved for an acquittal at the close of the State's evidence.  (<u>Id.</u>)  The motion was denied.  (<u>Id.</u> at 162.)  Petitioner did not call any witnesses or offer any evidence.

The jury deliberated for one hour and two minutes before returning with a verdict of guilty on both counts of selling cocaine, a controlled substance.  (<u>Id.</u> at 177.)  Petitioner was later sentenced as a prior drug offender to two concurrent twenty-five year terms of imprisonment.  (<u>Id.</u> at 191.)

Petitioner appealed, arguing that (1) the trial court had erred when it overruled his motion for an acquittal at the close of all evidence because there was an inadequate chain of custody for State Exhibits 5 and 6 and (2) the trial court had plainly erred in not sua sponte declaring a mistrial during the closing arguments when the prosecutor stated, "There is no reason on this earth that we would bring somebody in who wasn't identified and wasn't positive." (<u>Id.</u> at 169; (Resp. Ex. C at 9-10.)  The appellate court rejected both arguments, finding, in relevant part, that the present challenge to chain of custody had not been raised in the motion for judgment of acquittal, had not been a basis for objection when the exhibits were offered in evidence, and had not, therefore, been preserved for appellate review.  <u>State v. Nunley</u>, 992 S.W.2d 892, 894-95 (Mo.Ct.App. 1999).  Reviewing the argument for plain error, the appellate court found none.  <u>Id.</u> at 895.  The appellate court also reviewed Petitioner's second argument for plain error, and again found none.  <u>Id.</u>

Petitioner then filed a timely pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, raising seven claims of ineffective assistance of trial counsel. (Resp. Ex. H at 3-12.) The motion was amended by counsel, raising three grounds: trial counsel was ineffective because (1) she failed to perform an independent laboratory analysis of State's Exhibits 5 and 6; (2) she did not spend sufficient time with Petitioner prior to trial; and (3) she failed to object to State's Exhibits 5 and 6. (Id. at 13-17.)

Petitioner's trial counsel, Deidre McMenamin, testified at the evidentiary hearing on the motion that she had inherited Petitioner's case from another attorney in her office a few weeks before trial and met with Petitioner twice before trial. (Resp. Ex. G at 6.) She did not investigate the case. (Id.) The file and material and work that had been performed by the previous attorney were available to her; Petitioner had withdrawn a plea of guilty in exchange for a ten-year sentence; and the only option left was to go to trial. (Id. at 9, 11.) Petitioner told her he was not at the scene on either date but could not tell her where he had been or give her the names of any alibi witnesses. (Id. at 6.) The other attorney had requested, and been granted, an order to have an independent test of the substances conducted, but neither he nor she had done so. (Id. at 7.) After seeing the videotapes of the buy and seeing the substances clearly in Leadbetter's hand until he gave them to police, she had decided it was better to pursue a defense of mis-identification. (Id. at 7-8.) She had not objected to the chain of custody because she could not think of any reason for doing so. (Id. at 9.) She had no information to cause her to suspect that the tests by the crime lab were at fault or in error. (Id. at 10.)

Petitioner testified in a deposition that Ms. McMenamin told him he was going to be found guilty and he should plead guilty for a lesser sentence than the long one he was sure to receive if he went to trial. (Resp. Ex. H at 22.) She had no interest in proving him innocent and told him nothing about the State's evidence against him other than to mention a film. (Id.) He realized when the jury was deliberating that the videotapes shown them were not the same as shown at the preliminary hearing, but when he told his attorney this she dismissed it. (Id. at 23-24.) The tapes at the preliminary hearing clearly established an entrapment defense. (Id. at 26.) Those tapes record him asking the person in a vehicle why that person was trying to make it look like Petitioner was selling drugs and also show the person reaching in his shirt and pulling out a substance wrapped in cellophane. (Id.) He also told his attorney that the lack of any black person on his venire panel did not reflect the population makeup of the county. (Id. at 25.)

Addressing Petitioner's first claim, the court found that "[t]here has been no showing that additional testing would have done anything more than confirm" the finding of the crime lab. (Id. at 35.) "In the present case it is pure speculation to say that an independent test would have shown that the substance was not cocaine." (Id.) Petitioner's second claim was rejected on the grounds that there had been no showing that Ms. McMenamin "needed any additional time to get ready or that additional time would have resulted in a different outcome." (Id. at 38.) The court also rejected Petitioner's last claim, finding that it would be "pure speculation" to assume that any objection to State's Exhibits 5 and 6 would have been sustained. (Id. at 38-39.)

Petitioner appealed, arguing that the motion court had clearly erred in rejecting his first claim. (Resp. Ex. I.) Noting that "[t]he mere allegation that further analysis would have reached that result [that the substances at issue were not cocaine] is insufficient" and that "[a]llegations in a post-conviction motion are not self-proving[,]" the appellate court affirmed the motion court. Nunley v. State, 56 S.W.3d 468, 470 (Mo.Ct.App. 2001). Additionally noting that the trial record reflected that a qualified expert had performed the tests on the substances and that neither of Petitioner's attorneys had any information that would have caused them to reasonably doubt her results, the appellate court held that the motion court's conclusions that there was no showing that counsel's performance had been deficient or that Petitioner had been prejudiced by that performance were not clearly erroneous. Id.

One year later, Petitioner filed a petition for habeas corpus relief with the circuit court. This petition was dismissed without prejudice. See Nunley v. Rowley, 02cv858852 (Mo.Cir.Ct. Aug. 22, 2002). He then filed a petition for habeas corpus relief with the appellate court. This petition was denied six days later. State ex rel. Nunley v. Rowley, ED82015 (Mo.Ct.App. Nov. 6, 2002). In January 2003, he filed a petition for habeas corpus relief with the Missouri Supreme Court. This petition also was denied. Nunley v. Rowley, SC85027-SXR (Mo. March 4, 2003).

Petitioner now seeks federal habeas relief based on five grounds: (1) the evidence used to convict him was insufficient because Leadbetter identified him only at trial when he (Petitioner) was wearing an orange jumpsuit and that identification was a result of an unlawful arrest; (2) he was denied his right to confrontation because the trial court allowed

May to testify to an out-of-court statement made by an unknown person in the police department identifying Petitioner after seeing the videotape; (3) the trial court erred in denying his motion to suppress State's Exhibits 3, 4, 5, and 6, and in allowing witnesses to testify about Exhibits 5 and 6 because there was a problem with the chain of custody; (4) (a) his trial counsel was ineffective for failing to timely object to State's Exhibits 5 and 6 on grounds that the chain of custody was not sufficiently proven and (b) appellate counsel was ineffective for failing to brief the issue of chain of custody; and (5) his trial counsel was ineffective for failing to obtain an independent laboratory analysis of the substances Petitioner allegedly sold Leadbetter and such an analysis would have proven that the substances were not cocaine.

Respondent argues that grounds 1, 2, and 4 are procedurally barred and that ground 3 is without merit.[1] Petitioner counters that (i) the grounds were raised in his petitions for a writ of habeas corpus filed pursuant to Missouri Supreme Court Rule 91 and (ii) the confrontation and timely objection claims have a "factual commonality" with the claims that were presented to the state courts and, consequently, are not procedurally defaulted.

## Discussion

---

[1]Several attached pages to Petitioner's petition setting forth his grounds for relief were out of order. Specifically, the pages with his fifth ground were before the pages with his fourth ground. Respondent does not respond to the fifth ground, referring instead to the fourth ground as Petitioner's last ground. The Court will refer to the grounds as numbered by Petitioner. The ground overlooked by Respondent was presented to the state courts and will be addressed on its merits.

Grounds One, Two, and Four: Procedural Default.  Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies.  See **Baldwin v. Reese**, 541 U.S. 27, 27 (2004); **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991).  "Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'"  **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).  See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.").

To satisfy this exhaustion requirement, a state prisoner must fairly present his or her claims to the state courts.  **Forest v. Delo**, 52 F.3d 716, 719 (8th Cir. 1995).  "[T]o satisfy the 'fairly presented' requirement, [Petitioner] was required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in the Missouri state court."  **Abdullah v. Groose**, 75 F.3d 408, 411-12 (8th Cir. 1996) (quoting Ashker v. Leapley, 5 F.3d

1178, 1179 (8th Cir. 1993)) (alterations added). "[P]resenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." **Id.** at 412 (alteration added). See also **Gentry v. Lansdown**, 175 F.3d 1082, 1083 (8th Cir. 1999) ("A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits.").

It is undisputed that Petitioner did not present his first and second grounds, each alleging an constitutional violation at the trial level, in his direct criminal appeal. It is also undisputed that he did not present his fourth ground, alleging ineffective assistance of trial counsel for failure to object to two State's exhibits,[2] in his Rule 29.15 amended motion or in his postconviction appeal. See Mo.S.Ct.R. 29.15(a) (requiring claims of ineffective assistance of trial and appellate counsel to be raised in Rule 29.15 motion).

Petitioner argues, however, that he raised these three grounds in his state habeas petitions. His pursuit of a Rule 91 remedy does not satisfy the exhaustion requirement for claims of trial court error or ineffective assistance of counsel. See **Byrd v. Delo**, 942 F.2d 1226, 1232 (8th Cir. 1991) (noting that there were no cases of the Missouri Supreme Court reaching the merits of a Rule 91 petition raising claims that could have been raised in direct or post-conviction appeal). Moreover, the quick denial without explanation of his Rule 91

---

[2]Petitioner also includes in his fourth ground an allegation that appellate counsel was ineffective for failing to brief the issue of chain of custody. Appellate counsel did brief the issue; hence, this allegation lacks factual support.

petitions is not to be construed as a ruling on the merits of those petitions. "After *Coleman*, there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal issue." **Id.** See also **Sweet v. Delo**, 125 F.3d 1144, 1150 (8th Cir. 1997) ("[A] state habeas proceeding may not be used to raise a claim that was known to the petitioner at the time he filed his Rule 29.15 motion.").

Petitioner also argues that he raised his claim of ineffective assistance of appellate counsel in a motion to recall the mandate. This argument is unavailing. A motion to recall the mandate was the proper vehicle for presenting a claim of ineffective assistance of appellate counsel until 1996. **Becker v. State**, 77 S.W.3d 27, 28 (Mo.Ct.App. 2002). Effective January 1 of that year, a Rule 29.15 became the proper vehicle for asserting such a claim. **Id.** Petitioner was convicted after January 1, 1996, and thus had to raise his claim of ineffective assistance of appellate counsel in his Rule 29.15 motion. He did not.

Petitioner further argues that his first two grounds were fairly presented to the state courts because the underlying facts of these two claims were the same as the claims that were presented. As noted above, both the facts *and* the legal theories of the claims must be fairly presented to the state courts to satisfy the exhaustion requirement. See **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005); **Abdullah**, 75 F.3d at 411. Thus, in **Sweet**, 125 F.3d at 1152, a claim that a prosecutor's failure to disclose witnesses to be called at a penalty phase violated a state statute was found not to be a fair presentation that the same failure was prosecutorial misconduct. And in **Abdullah**, 75 F.3d at 412, the presentation of a Fourteenth

Amendment due process challenge to a trial court order requiring that Petitioner wear leg irons was held not to be a fair presentation of a Sixth Amendment claim based on the leg irons order.

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." **Coleman**, 501 U.S. at 732 (alteration added). Thus, Petitioner has met the technical requirement for exhaustion of grounds one, two, and four.

In order to preclude habeas petitioners from avoiding the exhaustion requirement and to "ensure[] that the States' interest in correcting their own mistakes is respected in all federal habeas cases," **id.** (alteration added), the state procedural bar that gives rise to a habeas petitioner having technically satisfied the exhaustion requirement provides an independent and adequate state-law ground for the petitioner's conviction, **id.** at 730; **Gray**, 518 U.S. at 162. The failure to include specific claims in a direct criminal appeal or in the appeal from the denial of a Rule 29.15 motion results in those claims being procedurally barred. See **Osborne**, 411 F.3d at 919; **Sweet**, 125 F.3d at 1149; **Lowe-Bey v. Groose**, 28 F.3d 816, 818 (8th Cir. 1991). This procedural bar, in turn, precludes federal habeas review of a defaulted claim "unless [the petitioner] can show cause and prejudice for the default, or actual

innocence." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added). Accord **Lowe-Bey**, 28 F.3d at 816.

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original).

Petitioner advances no cause for his procedural default, insisting instead, as noted above, that there is no procedural default.[3] Petitioner does, however, allege that his appellate counsel was ineffective for failing to present his first two grounds in his direct criminal appeal. Although "[i]neffective assistance of appellate counsel may constitute cause and prejudice excusing a procedural default[,]" **Tokar v. Bowersox**, 198 F.3d 1039, 1051 (8th Cir. 1999) (alterations added), such allegations must be first "'presented to the state courts

---

[3]Any attempt to advance allegations of ineffectiveness of state post-conviction counsel as cause would be unavailing because such allegations cannot supply the required cause to excuse a procedural default. See **Taylor v. Bowersox**, 329 F.3d 963, 971 n.13 (8th Cir. 2003); **Burns v. Gammon**, 173 F.3d 1089, 1092 (8th Cir. 1999); **Malone v. Vasquez**, 138 F.3d 711, 719 (8th Cir. 1998).

as an independent claim before [they] may be used to establish cause for a procedural default' in a federal habeas proceeding[,]" **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003) (quoting Murray, 477 U.S. at 488) (alterations added).  Petitioner did not present his present claims of ineffective assistance of appellate counsel to the state courts.

Because Petitioner has failed to establish cause for his default, it is unnecessary to consider whether he has shown prejudice.  See **Osborne**, 411 F.3d at 920; **Sweet**, 125 F.3d at 1151; **Abdullah**, 75 F.3d at 413.

The merits of a procedurally defaulted claim may be reached if actual innocence is established.  See **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005).  "The requirements to establish the requisite probability of innocence are high." **Osborne**, 411 F.3d at 920.  To do so, a petitioner "must come forward with new reliable evidence that was not available at trial," **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004), and then must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," **Schlup v. Delo**, 513 U.S. 298, 327 (1995) .  "The sort of evidence that cannot be used for a Schlup gateway claim [of actual innocence] includes 'evidence [that] could have been discovered earlier in the exercise of due diligence.'" **Nance**, 392 F.3d at 291 (quoting Cornell v. Nix, 976 F.2d 376, 380 (8th Cir. 1992) (en banc)) (first alteration added; second in original).  Claims of constitutional errors and pleas for justice are insufficient to establish a Schlup gateway claim.  **Sweet**, 125 F.3d at 1152.

Petitioner has failed to come forward with any new reliable evidence of his innocence. Although he alleges that videotapes shown at the preliminary hearing establish that he was entrapped, he does not introduce these videotapes or otherwise establish their existence and content.

Ground Three: Chain of Custody. Petitioner argued in his direct criminal appeal that his due process rights were violated by the trial court's admission of the State's Exhibits 5 and 6 because the State had failed to prove beyond a reasonable doubt that the substances analyzed by Johnson were the same substances sold to Leadbetter and given to May. After finding that this argument had not been properly preserved for appellate review, the Missouri Court of Appeals reviewed it for plain error and found none. Nunley, 992 S.W.2d at 894-95.

The Eighth Circuit Court of Appeals has reviewed for plain error claims so reviewed at the state appellate level. See **Kilmartin v. Dormire**, 161 F.3d 1125, 1127 (8th Cir. 1998); **Mack v. Caspari**, 92 F.3d 637, 641 (8th Cir. 1996). "Under this standard, . . . habeas relief [is granted] only if 'manifest injustice resulted' from the alleged errors." **Id.** (alterations added). Additionally, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they are so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne**, 411 F.3d at 917 (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)) (alteration added). Specifically, "[t]he question of whether or not a chain of custody has been shown is one of state law, and state law questions are not very often the basis of

constitutional error under habeas review." **Scott v. Jones**, 915 F.2d 1188, 1189 (8th Cir. 1990) (alteration added). Accord **Carter v. Armontrout**, 929 F.2d 1294, 1300 (8th Cir. 1991).

Under Missouri law, "[t]o receive exhibits [consisting of drugs seized by a law enforcement officer and analyzed by a different agency] and testimony regarding tests performed on those exhibits, the [circuit] court must be satisfied as to the identity of the exhibits *and that the exhibits were in the same condition when tested as when they were obtained*." **State v. Dawson**, 985 S.W.2d 941, 953 (Mo.Ct.App. 1999) (first two alterations added; third in original). This requires that the state "'provide the court with a reasonable assurance that the exhibits were not tampered with or contaminated.'" **State v. Bode**, 125 S.W.3d 924, 929-30 (Mo.Ct.App. 2004) (quoting Dawson, 985 S.W.2d at 953). "'Under the reasonable assurance standard, the state is not required to account for every hand-to-hand transfer of an exhibit between the time it was obtained and its introduction at trial, nor is it required to exclude every possibility that the evidence had been disturbed.'" **Id.** at 930 (quoting State v. Clay, 817 S.W.2d 565, 568 (Mo.Ct.App. 1991)).[4]

_____

[4]This is a similar evidentiary standard to that used in federal courts. See **United States v. Vallie**, 284 F. 3d 917, 920 (8th Cir. 2002) (holding that "physical evidence may be admitted if a reasonable probability exists that the evidence has not been changed or altered") (interim quotations omitted); **United States v. Miller**, 994 F.2d 441, 443 (8th Cir. 1993) ("The integrity of the evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with.").

The evidence at issue in Petitioner's case, were the substances in the two evidence bags, Exhibits 5 and 6,[5] introduced at trial.

The prosecution introduced testimony that the identifying information on the outside of the two evidence bags was supplied and written by Officer May. May then took the evidence bags to a highway patrol office in Cape Girardeau and locked both bags in an evidence locker in that office. May further testified that an "evidence man" from Highway Patrol Troop E in Poplar Bluff came, picked up both bags, and returned with them to Poplar Bluff. The "evidence man" then completed paper work at Poplar Bluff and took the bags to the Crime lab in Cape Girardeau. After the substances in the bags were analyzed, the "evidence man" retrieved the evidence bags from the Crime Lab and returned them to the evidence locker. May picked up the evidence bags on the morning of the trial.

Ms. Pamela Johnson, a chemist at the Crime Lab, testified that she had initialed and dated the bags when sealing them. Inside each evidence bag there was a cellophane bag containing a white substance. She weighed and tested the substances and concluded that they were cocaine base. She further testified that the seals on State Exhibits 5 and 6 were in the same condition as when she returned them to the agency, noting that her seals were still intact and that none of the other seals where broken.

The testimony of May and Johnson provided "a reasonable assurance that . . . [E]xhibits [5 and 6] were not tampered with or contaminated." **Bode**, 125 S.W.3d at 929-30

---

[5]Although Petitioner also refers to State's Exhibits 3 and 4, the two videotapes, these exhibits are not mentioned in the supporting facts and were not referred to in his direct criminal appeal.

(interim quotations omitted) (alterations added). The resulting admission of the testimony that the substances in these bags were cocaine base did not violate Petitioner's due process rights, nor was it a "manifest injustice."

Ground Five:  Ineffective Assistance of Counsel.  Petitioner argues that he was denied of ineffective assistance of trial counsel by counsel's failure to have an independent laboratory analyze the substances in State's Exhibits 5 and 6.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)).  "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original).  "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted).  Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-950 (8th Cir. 2001) (alteration added).

To establish that counsel's lack of competence violated the Sixth Amendment, the Petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F. 3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** (quoting Strickland, 466 U.S. at 697). The petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgement, the state-court decision applied *Strickland* incorrectly." **Hoon v. Iowa**, 313 F.3d 1058, 1062 (8th Cir. 2002).

The question of prejudice from counsel's performance need not be reached, however, if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Hoon**, 313 F.3d at 1061; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

Petitioner has not shown that an independent analysis of the two substances would have produced a different result than that of Ms. Johnson's. The only support he has for his

claim that an independent analysis would have shown the substances not to be cocaine is his own speculation. "This sort of speculation is 'simply inadequate to undermine confidence in the outcome.'" **Goode v. Armontrout**, 925 F.2d 239, 240 (8th Cir. 1991) (quoting Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989)). See, e.g. **Walls v. Bowersox**, 151 F.3d 827, 835 (8th Cir. 1998) (finding that habeas petitioner had failed to establish prejudice from trial counsel's allegedly deficient performance in not obtaining additional testing; petitioner had made no showing that such testing "would have revealed exculpatory or mitigating information" and had offered only "speculation" that testing might have done so); **Wing v. Sargent**, 940 F.2d 1189, 1191 (8th Cir. 1991) (finding that habeas petitioner's speculation as to how uncalled witnesses would have testified failed to meet his burden of proof that counsel's assistance was ineffective).

For the foregoing reasons, the Missouri courts' did not unreasonably apply Supreme Court law in concluding that Petitioner's claim of ineffective assistance of trial counsel for failure to obtain an independent analysis of the substances contained in State's Exhibits 5 and 6 was without merit. See **Williams v. Taylor**, 529 U.S. 362, 407-09 (2000) (setting forth standard of federal habeas review of claims reached on their merits by state courts).

## Conclusion

Petitioner fairly presented to the state courts only two of his five § 2254 claims and has failed to show cause for his procedural default of the three claims or to establish a gateway claim of actual innocence. The two claims that are not procedurally barred are without merit. Accordingly,

**IT IS HEREBY ORDERED** that petitioner Tommy Nunley's 28 U.S.C. § 2254 petition is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of April, 2006.